UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE


RICK L. WEST,                               )
                                            )
                Plaintiff,                  )
                                            )
v.                                          )        3:09-CV-370
                                            )        (VARLAN/SHIRLEY)
MICHAEL J. ASTRUE,                          )
Commissioner of Social Security,            )
                                            )
                Defendant.                  )


## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal

Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding

disposition by the District Court of Plaintiff's Motion for Summary Judgment [Doc. 9] and

Defendant's Motion for Summary Judgment [Doc. 16].  Plaintiff Rick L. West ("Plaintiff") seeks

judicial review of the decision by Administrative Law Judge ("ALJ") George L. Evans, III, to deny

him benefits, which was the final decision of Defendant Michael J. Astrue, Commissioner of Social

Security ("the Commissioner").

On April 13, 2005, Plaintiff filed an application for supplemental security income ("SSI").

[Tr.11]. On his application, Plaintiff alleged a period of disability which began on June 10, 2003.

[Tr. 11].  After his application was denied initially and also denied upon reconsideration, Plaintiff

requested a hearing.  On February 19, 2008, a hearing was held before the ALJ to review the

determination of Plaintiff's claim.  [Tr. 552-79].  On June 13, 2008, the ALJ found that Plaintiff was

not under a disability from June 10, 2003, through the date of the decision. [Tr. 8-19]. On July 14, 2009, the Appeals Council denied Plaintiff's request for review; thus, the decision of the ALJ became the final decision of the Commissioner. [Tr. 3-7]. Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## I.  ALJ FINDINGS

The ALJ made the following findings:

1.  The claimant has not engaged in substantial gainful activity since April 3, 2005, the application date (20 CFR 416.920(b) and 416.971 *et seq.*).

2.  The claimant has the following combination of impairments: peripheral polyneuropathy; lumbar spine degenerative disc disease; and possible fibromyalgia (20 CFR 416.920(c)).

3.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) including occasional climbing, balancing, stooping, kneeling, crouching, crawling, and overhead reaching, except he should avoid hazards such as dangerous moving machinery and unprotected heights. In addition, the claimant can understand and carry out simple to low level detailed tasks while getting along with others and adapting at that level of function.

5.  The claimant is capable of performing past relevant work as a disc jockey. This work does not require the performance of work-related activities precluded by the claimants residual functional capacity (20 CFR 416.965).

6.  The claimant has not been under a disability, as defined in the Social Security Act, since April 13, 2005 (20 CFR 416.920(f)), the date the application was filed.

[Tr. 13-19].

## II.    DISABILITY ELIGIBILITY

An individual is eligible for SSI if he has financial need and he is aged, blind, or under a disability.  See 42 U.S.C. § 1382(a).  "Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be determined to be under a disability only if his physical and/or mental impairments are of such severity that he is not only unable to do his previous work, but also cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  42 U.S.C. § 1382c(a)(3)(B).

Whether a SSI claimant is under a disability is evaluated by the Commissioner pursuant to a sequential five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his

> past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

A claimant bears the burden of proof at the first four steps. Id. The burden of proof shifts to the Commissioner at step five. Id. At step five, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

III.    STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007); Richardson v. Perales, 402 U.S. 389, 401 (1971) (citing Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by

the ALJ, or whether the reviewing judge may have decided the case differently.  Crisp v. Sec'y of
Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986).  The substantial evidence standard
is intended to create a "'zone of choice' within which the Commissioner can act, without the fear
of court interference."  Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v.
Bowen, 800 F.2d 535, 545 (6th Cir. 1986)).  Therefore, the Court will not "try the case de novo, nor
resolve conflicts in the evidence, nor decide questions of credibility."  Walters, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by
substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached
through application of the correct legal standards and in accordance with the procedure mandated
by the regulations and rulings[1] promulgated by the Commissioner.  See Wilson v. Comm'r of Soc.
Sec., 378 F.3d 541, 544 (6th Cir. 2004) ("Although substantial evidence otherwise supports the
decision of the Commissioner in this case, reversal is required because the agency failed to follow
its own procedural regulation, and the regulation was intended to protect applicants like [plaintiff].");
id. at 546 ("The general administrative law rule, after all, is for a reviewing court, in addition to
whatever substantive factual or legal review is appropriate, to 'set aside agency action . . . found to
be . . . without observance of procedure required by law.'" (quoting 5 U.S.C. § 706(2)(d) (2001)));
cf. Rogers, 486 F.3d at 243 (holding that an ALJ's failure to follow a regulatory procedural
requirement actually "denotes a lack of substantial evidence, even when the conclusion of the ALJ
may be justified based upon the record").  "It is an elemental principle of administrative law that

---

[1] See Blakley, 581 F.3d at 406 n.1 ("Although Social Security Rulings do not have the
same force and effect as statutes or regulations, '[t]hey are binding on all components of the Social
Security Administration' and 'represent precedent final opinions and orders and statements of policy'
upon which we rely in adjudicating cases." (quoting 20 C.F.R. § 402.35(b))).

agencies are bound to follow their own regulations," and the Court therefore "cannot excuse the denial of a mandatory procedural protection simply because . . . there is sufficient evidence in the record" to support the Commissioner's ultimate disability determination. <u>Wilson</u>, 378 F.3d at 545-46. The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." <u>Wilson</u>, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. <u>See id.</u> at 547 (holding that an ALJ's violation of the rules for evaluating the opinion of a treating medical source outlined in 20 C.F.R. § 404.1527(d) was a deprivation of an "important procedural safeguard" and therefore not a harmless error). If a procedural error is not harmless, then it warrants reversing and remanding the Commissioner's disability determination. <u>Blakley</u>, 581 F.3d at 409 (stating that a procedural error, notwithstanding the existence of substantial evidence to support the ALJ's ultimate decision, requires that a reviewing court "reverse and remand unless the error is a harmless *de minimis* procedural violation").

Finally, when reviewing the Commissioner's decision, the Court may order that additional evidence be taken "upon a showing that there is new evidence which is material and there is good cause for the failure to incorporate such evidence into the record[.]" 42 U.S.C. § 405(g).

On review, "the party seeking remand bears the burden of proving that a remand is proper under Section 405." <u>Oliver v. Sec'y of Health & Human Servs.</u>, 804 F.2d 964, 966 (6th Cir. 1986)

(citing <u>Willis v. Sec'y of Health & Human Servs.</u>, 727 F.2d 551 (6th Cir. 1984)); <u>see also</u> <u>Boyes v. Sec'y of Health & Human Servs.</u>, 46 F.3d 510, 512 (6th Cir. 1994) ("Claimant bears the burden of proving his entitlement to benefits.").

## IV.     ANALYSIS

Plaintiff appeals the ALJ's decision on three grounds. First, Plaintiff contends that the ALJ erred by finding that he had no severe mental impairments. [Doc. 10 at 11] ("The substantial evidence of record in this case demonstrates the existence of severe mental impairments . . . ."). Specifically, Plaintiff argues that the ALJ "erred in failing to properly consider the opinions of record regarding [his] mental limitations and in completely ignoring the opinion of a treating physician, Dr. Coffey." [Doc. 10 at 16].

Second, Plaintiff contends that the ALJ improperly determined his physical residual functional capacity ("RFC"). [Doc. 10 at 17]. Plaintiff argues that the ALJ erred when determining his RFC by "fail[ing] to consider the effects of [his] morbid obesity and associated sleep apnea" on his ability to work. [Doc. 10 at 17]. As a result of this error, Plaintiff contends, the ALJ's RFC determination is "unsupported by substantial evidence." [Doc. 10 at 20].

Third, Plaintiff contends that "[t]he ALJ's determination that [he] can perform his past relevant work is not supported by substantial evidence." [Doc. 10 at 20]. Plaintiff argues that he in fact has not performed any "past relevant work" because his disc jockeying was never substantial gainful activity. [Doc. 10 at 21] ("The evidence of record indicates Plaintiff's past work as a disc jockey was sporadic, was part-time, and never constituted substantial gainful activity."). Further, Plaintiff argues that the ALJ's analysis of his ability to perform past relevant work was flawed in that

it did not adhere to the requirements of SSR 82-62 (08/20/1980). [Doc. 10 at 23-24].

Plaintiff maintains that the ALJ "inappropriately adjudicated [his] case" and that "the evidence of the record clearly proves that [he] is unable to perform basic job functions." [Doc. 10 at 25]. Accordingly, Plaintiff concludes that he is "unable to maintain gainful employment and . . . is 'disabled.'" [Doc. 10 at 25].

The Court addresses Plaintiff's three contentions in turn.

## A.     Plaintiff's alleged mental impairments

### (i)     The ALJ's determination that Plaintiff had no severe mental impairments is not a reversible error.

The ALJ discussed Plaintiff's mental condition as follows:

> The claimant's medically determinable impairments of depression, rule out pain disorder associated with both psychological factors and a general medical condition, personality disorder, and provisional low average intellectual functioning, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work and are therefore nonsevere.

[Tr. 13].

Plaintiff contends that the ALJ erred by finding that he had no severe mental impairments. [Doc. 10 at 11] ("The substantial evidence of record in this case demonstrates the existence of severe mental impairments . . . ."). Plaintiff alleges that he suffers from "anxiety and depression which significantly interfere[] with his functioning." [Doc. 10 at 12]. He argues that the following evidence and opinions contained in the record "clearly demonstrate the existence of severe mental impairments which would adversely affect [his] ability to perform basic work activities," [Doc. 10

at 15]:

(1) On June 1, 2005, Dr. Bruce Coffey, M.D., opined that Plaintiff suffered from "anxiety and depression," for which he was prescribed Elavil. [Tr. 503].

(2) On September 22, 2005, Dr. Coffey examined Plaintiff and noted that he "needs psychiatric evaluation." [Tr. 396]. Dr. Coffey further noted that he felt that Plaintiff's physical symptoms were "psych. related." [Tr. 396].

(3) On March 7, 2005, Dr. Bert A. Hampton, M.D., of the Fort Sanders Regional Medical Center Sleep Disorders Center noted as follows: "[Plaintiff] may benefit from formal psychological evaluation and management of his depression and anxiety. I will defer any referral in this regard to Dr. Coffey." [Tr. 414].

(4) On February 16, 2005, Dr. Sivalingam Kanagasegar, M.D., a rheumatology specialist who examined Plaintiff, advised Dr. Coffey, "You could consider referring [Plaintiff] to [a] psychiatrist for anxiety and depression." [Tr. 337].

(5) On November 17, 2005, Dr. Kanagasegar again recommended psychiatric referral: "I also discussed with [Plaintiff] about possible referral to [a] psychiatrist. [Plaintiff] agreed with that. Probably you could refer [Plaintiff] to a psychiatrist for further evaluation." [Tr. 331].

(6) "The records of Ambulatory Care Center, dated October 28, 2005, through February 10, 2006, reflect Plaintiff's difficulty with anxiety and nervousness." [Doc. 10 at 13](citing [Tr. 311-29]).[2]

(7) On October 3, 2005, Dr. Joe H. Browder, M.D., of Pain Consultants of East Tennessee noted that Plaintiff's "[p]sychiatric history is positive for anxiety, depression, nervousness, and mood changes." [Tr. 309]. Dr. Browder included "depression" as part of his diagnostic assessment. [Tr. 310].

(8) On October 19, 2005, Ms. Alice Garland, M.S., a state disability determination services ("DDS") psychological examiner who examined Plaintiff, included in her diagnostic impression that Plaintiff suffered from "major depressive disorder, recurrent, moderate" and "personality disorder NOS [('not otherwise specified')] with dependent features noted." [Tr. 216]. Ms. Garland concluded as follows: "[Plaintiff] may be intermittently limited in his ability to do very detailed and complex work. His ability to persist and concentrate, work with the public, and ability to adapt appear to be moderately limited." [Tr. 216-17].

[2] The Court notes that the records to which Plaintiff refers consist of largely illegible handwritten progress notes and lab results. Plaintiff did not provide pinpoint citations to the pages in these records that purportedly show his "difficulty with anxiety and nervousness," [Doc. 10 at 13].

(9) On October 25, 2005, Brad Williams, a state DDS psychological consultant who reviewed Plaintiff's record, opined that Plaintiff suffered from "a medically determinable impairment, MDD–moderate." [Tr. 221]. Williams further opined that Plaintiff suffered from "affective disorders" and "personality disorders," and that a mental RFC assessment was necessary.[3] [Tr. 218].

(10) Treatment notes from the "Ambulatory Care Center from June 19, 2007, through January 8, 2008" show that Plaintiff "continued to suffer depression, anxiety, and nervousness." [Doc. 10 at 15] (citing [Tr. 155-75]).

(11) "Plaintiff received treatment at Ridgeview Psychiatric Hospital & Center from June 26, 2007, through [August 22, 2007,] during which time he carried the diagnosis of depressive disorder NOS . . . Problems noted during treatment include depression, blunted, affect, sad and worried mood, insomnia, anxiety, feelings of worthlessness/guilt, crying spells, feeling overwhelmed, irritability, low energy, difficulty coping with everyday life, avoidance of contact with others, and isolation." [Doc. 10 at 15] (citing [Tr. 176-94]).

Plaintiff argues that the ALJ did not properly consider the above evidence and thus reached an incorrect conclusion that he had no severe mental impairment.

In response, the Commissioner contends that "the ALJ reasonably evaluated Plaintiff's mental condition." [Doc. 17 at 13]. The Commissioner argues that "[a]lthough the ALJ did not find Plaintiff's mental condition to be a 'severe' impairment, he clearly incorporated limitations Plaintiff had based on his mental condition in his RFC finding." [Doc. 17 at 14]. The Commissioner asserts that "[i]t is not necessary for an ALJ to designate each of [a] claimant's impairments as 'severe' or 'non-severe'" at step two of the disability determination process as long as the process proceeds to step three. [Doc. 17 at 13]. The Commissioner explains as follows:

> To proceed to step three it is only necessary for the ALJ to find that the claimant has an impairment or a combination of impairments that is severe. Even if an ALJ erroneously finds a particular severe impairment to be non-severe at step two, it is not reversible error as long as the ALJ finds that another impairment, or a combination of

---

[3] Plaintiff points out that "[i]t is unclear from the report whether Mr. Williams is a physician or a psychologist." [Doc. 10 at 15].

impairments, is severe and proceeds to the next step of the sequential evaluation process.

[Doc. 17 at 13-14] (citing <u>Maziarz v. Sec'y of Health & Human Servs.</u>, 837 F.2d 240, 244 (6th Cir. 1987)).

The Commissioner is correct that even if the ALJ erred by finding that Plaintiff had no severe mental impairment, the error was harmless and hence not grounds for remand. As long as at least one of a claimant's impairments is found to be severe at step two of the disability determination process, "the [ALJ] must continue with [its] remaining steps . . . ." <u>Maziarz</u>, 837 F.2d at 244; <u>see also</u> <u>Higgs v. Bowen</u> 880 F.2d 860, 862-63 (6th Cir. 1988) (The determination of whether an impairment is severe is an "administrative convenience to screen out claims that are totally groundless solely from a medical standpoint."). When this occurs, the failure to find another condition severe "[does] not constitute reversible error" since "the [ALJ] properly could consider claimant's [other condition] in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity." <u>Maziarz</u>, 837 F.2d at 244; <u>see also</u> 20 C.F.R. § 416.945(e) ("When you have a severe impairment(s) . . . we will consider the limiting effects of all your impairment(s), even those that are not severe, in determining your residual functional capacity.").

In this case, the ALJ found that Plaintiff had physical impairments that were severe and proceeded to step three of the disability determination process to determine Plaintiff's RFC. [Tr. 13]. Because the ALJ could–and did–consider Plaintiff's mental condition at that step, any error in failing to find that Plaintiff had a severe mental impairment was harmless.

**(ii)    The ALJ properly considered the evidence of record when determining Plaintiff's mental RFC.**

The ALJ found that Plaintiff had the mental RFC to "understand and carry out simple to low level detailed tasks while getting along with others and adapting at that level of function." [Tr. 15]. Plaintiff contends that this finding is "unsupported by substantial evidence." [Doc. 10 at 17]. Plaintiff asserts that the eleven facts enumerated above in part (A)(i) demonstrate that he has a lesser mental RFC than that articulated by the ALJ. Plaintiff argues that the ALJ improperly determined his mental RFC by (1) "according little weight to the only examining opinion of record, that of Ms. Garland," (2) "according greater weight to the opinion of [Brad Williams]" than to the opinion of Ms. Garland, and (3) "completely ignoring the opinion" of Dr. Coffey. [Doc. 10 at 15-16].

In response, the Commissioner contends that the ALJ properly evaluated the evidence and opinions contained in the record when determining Plaintiff's mental RFC. The Commissioner states that "[t]he opinion of [Brad Williams] provided substantial evidence for the ALJ's mental RFC finding." [Doc. 17 at 14]. The Commissioner responds to Plaintiff's specific assignments of error by arguing that (1) the ALJ had good reasons for giving Ms. Garland's opinion little weight, [Doc. 17 at 15-16], (2) the ALJ had good reasons for relying on the opinion of Brad Williams instead of that of Ms. Garland, see [Doc. 17 at 15-17], and (3) the ALJ in fact properly considered Dr. Coffey's opinion and accorded it appropriate weight, [Doc. 17 at 14-15]. For the following reasons, the Court agrees with the Commissioner and finds that the ALJ properly determined Plaintiff's mental RFC.

When determining a claimant's RFC, an ALJ is required to evaluate every medical opinion in the record, regardless of its source. 20 C.F.R. § 416.927(d). A "medical opinion" is defined as a statement from a physician, psychologist, or "other acceptable medical source" that reflects

"judgments about the nature and severity of [a claimant's] impairment(s)."  20 C.F.R. §

416.927(a)(2).  A medical source is considered a *treating* medical source if he has provided medical

treatment or evaluation, and he has had an ongoing treatment relationship with the claimant "with

a frequency consistent with accepted medical practice for the type of treatment and/or evaluation

[that is] typical for the [treated condition(s)]."  Blakley, 581 F.3d at 407 (quoting 20 C.F.R. §

404.1502).

An ALJ "must" give a medical opinion provided by a *treating* source controlling weight if

it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and it

is "not inconsistent with the other substantial evidence in the case record." Wilson, 378 F.3d at 544;

see 20 C.F.R. § 416.927(d)(2).  If an ALJ decides not to give controlling weight to the medical

opinion of a treating source, he is required to explain why in his narrative decision.  20 C.F.R. §

404.1527(d)(2); Shelman v. Heckler, 821 F.2d 316, 321 (6th Cir. 1987) (stating that while an ALJ

is not bound by the opinions of a claimant's treating physicians, he is required to set forth some basis

for rejecting these opinions).  The ALJ is also required to provide in his narrative "good reasons"

justifying the weight that he actually gave to a treating source's non-controlling opinion.  20 C.F.R.

§ 416.927(d)(2); Blakley, 581 F.3d at 401 (remanding a claim to the Commissioner "because the

ALJ failed to give good reasons for discounting the opinions of [the claimant]'s treating

physicians").  In order to determine the proper weight to give to a treating source's opinion, the ALJ

must conduct a six-factor analysis.  See 20 C.F.R. § 416.927(d)(2).  The ALJ must consider (1) the

length of the treatment relationship and the frequency of examination; (2) the nature and extent of

the treatment relationship; (3) the supportability of and evidentiary basis for the opinion; (4) the

consistency of the opinion with the record as a whole; (5) the specialization of the source; and (6)

anything else that tends to support or contradict the opinion. 20 C.F.R. § 416.927(d)(2)-(6).

The Court addresses in turn the ALJ's consideration of the opinions of Dr. Coffey, Ms. Garland, and Brad Williams.

       *(a)*    *Dr. Bruce Coffey*

In this case, Plaintiff's primary care physician was Dr. Bruce Coffey, M.D. On June 1, 2005, Dr. Coffey opined that Plaintiff suffered from "anxiety and depression," for which he was prescribed Elavil. [Tr. 503]. On September 22, 2005, Dr. Coffey examined Plaintiff and noted that he "needs psychiatric evaluation." [Tr. 396]. Dr. Coffey further noted that he felt that Plaintiff's physical symptoms were "psych. related."[4] [Tr. 396].

The ALJ expressly mentioned Dr. Coffey's evaluation of Plaintiff's mental condition as follows: "Notably, *primary care physician* Dr. Coffey stated in October 2005 that he felt that the claimant's [pain] symptoms were psychiatrically related." [Tr. 16] (emphasis added). Contrary to Plaintiff's assertion, it is clear from this statement that the ALJ recognized Dr. Coffey as a treating physician. See [Doc. 10 at 12] ("[T]he ALJ did not even seem to realize Dr. Coffey was a treating

---

[4] Plaintiff asserts that Dr. Coffey expressed an opinion that his "anxiety and depression significantly interferes with his functioning." [Doc. 10 at 12]. Plaintiff did not provide a pinpoint citation to support this assertion and the Court has been unable to locate any express statement by Dr. Coffey in the record that indicates that he believed that Plaintiff's anxiety and depression significantly interfered with his functioning. Presumably, Plaintiff bases his assertion on the fact that Dr. Coffey completed a standard DDS mental diagnosis form. [Tr. 503]. On the form, Dr. Coffey was asked, "Does your patient have an underlying mental disorder which significantly interferes with functioning?" [Tr. 503]. The form instructed Dr. Coffey to circle either "yes" or "no." [Tr. 503]. Dr. Coffey did not circle either word, and he instead wrote "anxiety & depression" in the space beneath the question. [Tr. 503]. Dr. Coffey offered no further explanation. [Tr. 503]. The Court finds that this is not an unequivocal expression of an opinion that Plaintiff's anxiety and depression significantly interfered with his functioning.

physician."). Plaintiff is correct, however, that the ALJ did not mention Dr. Coffey's opinion that he suffered from "anxiety and depression." [Tr. 503].

The Court finds that the ALJ's failure to mention Dr. Coffey's opinion that Plaintiff suffered from anxiety and depression was not error. It was reasonable for the ALJ to omit discussion of Dr. Coffey's opinion because it was not a "medical opinion" as defined by 20 C.F.R. § 416.927(a)(2). A "medical opinion" within the regulatory definition is as a statement from a physician, psychologist, or "other acceptable medical source" that reflects "judgments about the nature and severity of [a claimant's] impairment(s)." Id. Dr. Coffey's opinion that Plaintiff suffered from anxiety and depression was simply a conclusory diagnosis. It was not a judgment about the nature and severity of the diagnosed anxiety and depression. The Commissioner is correct that "Dr. Coffey's opinion did not contain any specific limitations, but rather, was a very general statement." [Doc. 17 at 14]; see [Tr. 395, 401-02, 503]. Dr. Coffey did not explain how he reached his diagnosis of anxiety and depression, and he provided no indication that it was "well-supported by medically acceptable clinical and laboratory diagnostic techniques." Wilson, 378 F.3d at 544; see 20 C.F.R. § 416.927(d)(2). Further, Dr. Coffey is not a mental health specialist and his diagnosis of Plaintiff's mental condition was therefore entitled to less weight than the diagnoses and opinions that were provided by specialists. See 20 C.F.R. § 416.927(d)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his area of specialty than to the opinion of a source who is not a specialist."). For these reasons, the Court finds that the ALJ did not err by failing to mention Dr. Coffey's diagnosis of anxiety and depression. See Wilson, 378 F.3d at 547 (explaining that when a medical opinion is "so patently deficient that the Commissioner could not possibly credit it," an ALJ's failure to discuss the opinion "may not warrant reversal").

Moreover, although the ALJ did not mention Dr. Coffey's diagnosis of anxiety and depression, he did expressly find that Plaintiff suffered from the "medically determinable impairments of depression . . . personality disorder, and provisional low average intellectual functioning." [Tr. 13]. If this finding was not an outright adoption of Dr. Coffey's diagnosis that Plaintiff suffered from depression, it was at least consistent with it. Accordingly, it is clear that the ALJ's omission of Dr. Coffey's diagnosis from his narrative decision was not the result of a failure to consider Plaintiff's depression. The ALJ did not overlook Plaintiff's depression; he expressly recognized that Plaintiff had sought treatment for it. See [Tr. 13, 17-18]. Thus, even if the omission of Dr. Coffey's diagnosis could be characterized as an error, it was a harmless error. See Wilson, 378 F.3d at 547 (failure to mention a treating physician's opinion may be harmless "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion").

The Court concludes that the ALJ did not improperly consider Dr. Coffey's opinion when determining Plaintiff's mental RFC.

### (b)     Alice Garland

On October 19, 2005, Ms. Alice Garland, M.S., a state DDS psychological examiner, examined Plaintiff and provided an assessment of his mental condition. Ms. Garland estimated Plaintiff's intelligence as "low average." [Tr. 215]. She estimated Plaintiff's "ability to relate superficially" as "adequate." [Tr. 216]. Ms. Garland's diagnostic impression included that Plaintiff suffered from "major depressive disorder, recurrent, moderate" and "personality disorder NOS [('not otherwise specified')] with dependent features noted." [Tr. 216]. She explained how these mental

impairments affected Plaintiffs functioning: "[Plaintiff] may be intermittently limited in his ability to do very detailed and complex work. His ability to persist and concentrate, work with the public, and ability to adapt appear to be moderately limited." [Tr. 216-17]. Ms. Garland concluded her assessment as follows: "Claimant appears to see himself as someone who cannot work and may act on that belief. He does not believe that he can work because of health problems. Dependent traits to personality may play a major role in the claimant's not working." [Tr. 217].

The ALJ expressly discussed Ms. Garland's assessment in his decision. [Tr. 17-18]. He provided an accurate recapitulation of the assessment and then explained that he gave it "little weight, as it is inconsistent with the overall evidence of record, including the results of Ms. Garland's own examination and with the claimant's sparse psychological treatment." [Tr. 18]. The ALJ included the caveat that he did not discount Ms. Garland's opinion that "[d]ependent traits to personality may play a major role in the claimant's not working." [Tr. 18] (citing [Tr. 217]).

Plaintiff argues that it was error for the ALJ to accord little weight to Ms. Garland's opinion because it was "the only examining opinion of record." [Doc. 10 at 15-16]. The Commissioner responds that it was reasonable for the ALJ to give Ms. Garland's opinion little weight because "Plaintiff's performance on the mental status examination and his ability to perform this wide range of activity appeared inconsistent with [Ms.] Garland's opinion that Plaintiff had moderate restrictions in his ability to persist, concentrate, work with the public, and adapt." [Doc. 17 at 16]. The Commissioner also argues that it was appropriate to give Ms. Garland's opinion little weight because it was "inconsistent with Plaintiff's own reported activities." [Doc. 17 at 16].

The Court agrees with the Commissioner and finds that the ALJ's consideration of Ms. Garland's opinion was not improper. In deciding how much weight to give opinions in the record,

ALJs are required to consider them in light of the same factors used to determine whether treating physicians' opinions will be given controlling weight. See 20 C.F.R. § 416.927(d)(2)-(6). It is clear that the ALJ in this case expressly stated the weight he gave Ms. Garland's opinion (little weight) and provided a reason (inconsistency with the record) justifying that weight. The inconsistency of an opinion with the record as a whole is specifically enumerated in the regulations as a reason for determining that the opinion is entitled to reduced weight. 20 C.F.R. § 416.1527(d)(4).

The Court finds that it was reasonable for the ALJ to conclude that Ms. Garland's opinion was "inconsistent with the overall evidence of record." [Tr. 18]. Ms. Garland found that Plaintiff's "ability to persist and concentrate, work with the public, and ability to adapt appear to be moderately limited." [Tr. 216-17]. But Plaintiff was able to persist and concentrate during Ms. Garland's examination, see [Tr. 18] (explaining that Plaintiff "was able to recall three out of three objects mentioned after an elapsed period of five minutes; he named four recent presidents; knew a recent news event; and was able to calculate serial three's backwards from 100"), and he indicated that pain, not a mental inability to interact with the public, was what kept him from working, see [Tr. 18] ("When the examiner asked Mr. West what the main reason was that kept him from working, he said because of the pain. He said he may be able to go to work for a couple of days, but then the aches and pains get to him."). Further, Plaintiff had only "sparse psychological treatment," [Tr. 18]; see also [Tr. 16] ("[T]he record shows that [Plaintiff] only sought formal psychological treatment from June to August 2007."), and it was reasonable for the ALJ to interpret this fact as inconsistent with Ms. Garland's opinion that Plaintiff was moderately limited. The Court finds that there was substantial evidence in the record to support the ALJ's determination that Ms. Garland's opinion was entitled to little weight.

-18-

Although the ALJ failed to expressly analyze Ms. Garland's opinion using each factor provided in 20 C.F.R. § 416.927(d)(2)-(6), he did focus heavily on one of the factors, inconsistency with the record as a whole, in order to decide that the opinion was entitled to little weight. See 20 C.F.R. § 404.1527(d)(4). The ALJ provided sufficient discussion about why he found Ms. Garland's opinion to be inconsistent with the record to allow for meaningful judicial review of his decision. Accordingly, the Court concludes that the ALJ's failure to expressly analyze Ms. Garland's opinion using *all* of the 20 C.F.R. § 404.1527(d)(2)-(6) factors in his narrative decision was a harmless *de minimis* procedural error that does not warrant remand. See Blakley, 581 F.3d at 409 (a failure to expressly discuss all six factors is a harmless error when a court can engage in meaningful review of the ALJ's determination of the weight to which the opinion was entitled (citing Wilson, 378 F.3d at 544)).

Moreover, regardless of the fact that the ALJ stated that he gave Ms. Garland's opinion little weight, it appears that the ALJ's RFC finding is consistent with Ms. Garland's opinion. The ALJ found that Plaintiff had the mental RFC to "understand and carry out simple to low level detailed tasks while getting along with others and adapting at that level of function." [Tr. 15]. Ms. Garland opined, "[Plaintiff] may be intermittently limited in his ability to do very detailed and complex work. His ability to persist and concentrate, work with the public, and ability to adapt appear to be moderately limited." [Tr. 216-17]. Plaintiff has not explained how verbatim adoption of Ms. Garland's opinion in the RFC finding would have reduced the range of jobs that the ALJ found him able to perform. Accordingly, Plaintiff's complaints about the ALJ's consideration of Ms. Garland's opinion are misplaced.

(c)     *Brad Williams*

On October 25, 2005, Brad Williams, a state DDS psychological consultant who reviewed Plaintiff's record, completed a Mental RFC Assessment Form. [Tr. 209-12, 218-31]. Williams's qualifications are not clear from the record. See n.3, *supra*. The ALJ expressly discussed Williams's opinion as follows:

> In October 2005, Dr. Williams, a state agency psychological consultant, reviewed the records and essentially opined that the claimant could: understand and carry out simple to low level detailed tasks while getting [along] with others and adapting at that level of function. Dr. Williams further stated that the claimant's mood and personality could limit his persistence, concentration, and social interaction such that he could not perform more complex tasks nor deal with the public except in simple situations. Greater weight is given to Dr. Williams's opinion as it is more consistent with the overall evidence of record, including with the claimant's self-reported activities.

[Tr. 18] (citing [Tr. 211])].

Plaintiff argues that the ALJ erred by (1) giving Williams's opinion greater weight than the opinion of Ms. Garland even though Williams never examined Plaintiff, and (2) failing to incorporate *all* of the limitations noted in Williams's opinion into the statement of Plaintiff's mental RFC. [Doc. 10 at 15-16]. The Court rejects both arguments.

With regard to Plaintiff's first argument, the Court finds that the ALJ's decision to give greater weight to Williams's opinion was reasonable and not error. As explained *supra* in part (A)(ii)(b) of this report, it was reasonable for the ALJ to find that Ms. Garland's opinion was inconsistent with the record as a whole and thus entitled to little weight. Accordingly, after discounting Ms. Garland's opinion, it was not error for the ALJ to rely on Williams's opinion even though Williams was not an examining psychologist. Moreover, Williams's opinion was not

inconsistent with Ms. Garland's opinion. Ms. Garland opined, "[Plaintiff] may be intermittently limited in his ability to do very detailed and complex work. His ability to persist and concentrate, work with the public, and ability to adapt appear to be moderately limited." [Tr. 216-17]. Williams concluded that Plaintiff "could understand and carry simple [to] low level detailed tasks while getting along with others and adapting at that level of function." [Tr. 211]. The moderate limitations found by Ms. Garland are not inconsistent with performance of the low-level tasks that Williams believed Plaintiff capable of performing. Because Williams's opinion was not inconsistent with Ms. Garland's opinion, the Court finds that any error in weighing the two against each other could not have prejudiced Plaintiff.

With regard to Plaintiff's second argument, the Court finds that the ALJ did not err by failing to include every specific limitation noted by Williams when stating Plaintiff's mental RFC. There is no need to engage in semantics to understand that the ALJ meant to incorporate Williams's opinion into his RFC finding. The ALJ's statement of Plaintiff's RFC is brief: Plaintiff has the capacity to "understand and carry out simple to low level detailed tasks while getting along with others and adapting at that level of function." [Tr. 15]. It was not necessary for the ALJ to list every specific limitation noted by Williams. Moreover, as the Commissioner points out, any specific limitations that were not expressly included in the RFC finding were only noted by Williams in the "Summary Conclusions" section, [Tr. 209-10], of the Mental RFC Assessment Form that he prepared. [Doc. 17 at 16-17]. The Summary Conclusions section of the Form "is merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of the documentation and does not constitute the RFC assessment." [Doc. 16 at 17]. The ALJ's RFC finding incorporates all of Williams's conclusions recorded in the "Functional Capacity Assessment"

section, [Tr. 211], of the Form, which is the section in which a doctor or psychologist is meant to actually write his opinion of a claimant's mental RFC.  See [Doc. 17 at 16-17] (explaining the sections of a Mental RFC Assessment Form).

The Court concludes that the ALJ properly considered Brad Williams's opinion when determining Plaintiff's mental RFC.


**B.      Plaintiff's physical RFC**

Plaintiff contends that the ALJ improperly determined his physical RFC by "fail[ing] to consider the effects of [his] morbid obesity and associated sleep apnea" on his ability to work.  [Doc. 10 at 17] ("Nowhere in his decision does the ALJ even mention Plaintiff's morbid obesity or his sleep apnea[.]").  Plaintiff asserts that SSR 02-01p (09/12/2002) required the ALJ to "perform an individualized assessment of the impact of obesity on [his] functioning."  [Doc. 10 at 19].

In response, the Commissioner contends that the ALJ's statement of Plaintiff's physical RFC was supported by substantial evidence.  [Doc. 17 at 17].  The Commissioner argues that the Physical RFC Assessment Form, [Tr. 233-40], completed by Dr. Nathaniel Robinson, M.D., "provided substantial support for the ALJ's physical RFC finding."  [Doc. 17 at 18].  With regard to Plaintiff's obesity, the Commissioner points out that only one doctor, Dr. Joe H. Browder, M.D., indicated that Plaintiff's obesity caused any physical limitations.  [Doc. 17 at 19] (arguing that except for Dr. Browder, "the doctors who reported [Plaintiff's obesity] did not indicate limitations on Plaintiff's abilities due to obesity").  The Commissioner argues that the ALJ in fact considered Dr. Browder's opinion:

> The ALJ expressly considered Dr. Browder's clinical findings related
> to obesity.  Further, Dr. Robinson was clearly aware of Plaintiff's

obesity when he gave his opinion regarding Plaintiff's limitations. Notably, Dr. Robinson expressly considered the examination findings from Dr. Browder, which indicated decreased range of motion secondary to obesity, when arriving at his opinion. Thus, by relying on Dr. Robinson's opinion, the ALJ considered those limitations related to Plaintiff's obesity, and incorporated those limitations into his RFC finding.

[Doc. 17 at 19].

The Commissioner also argues that the ALJ's failure to discuss Plaintiff's alleged sleep apnea was not error because "Plaintiff does not point to any medical opinion indicating work preclusive restrictions due to his possible sleep apnea." [Doc. 17 at 20].

The Court agrees with the Commissioner and finds that the ALJ properly determined Plaintiff's physical RFC. The ALJ's decision indicates that he considered Plaintiff's obesity when determining his RFC. Specifically, the ALJ considered Dr. Browder's finding that Plaintiff's range of motion was restricted by his obesity, see [Tr. 16, 308], Dr. Juliao's finding that Plaintiff "did not have any severe physical impairments, either singly or by combined effect of his conditions," [Tr. 17]; see also [Tr. 232], and Dr. Robinson's review, which found that Plaintiff "could perform light work, including occasional climbing, balancing, stooping, kneeling, crouching, crawling, and overhead reaching . . . .", [Tr. 17]; see also [Tr. 234-35, 240]. Moreover, as the Commissioner points out, "Plaintiff did not cite to any doctor who [indicated] greater physical limitations than . . . Dr. Robinson." [Doc. 17 at 18]. Because the ALJ based his decision on opinions that clearly took Plaintiff's obesity into account, the Court finds that the ALJ's physical RFC finding was supported by substantial evidence.

The Court also finds that the ALJ was not obligated to consider Plaintiff's alleged sleep apnea since Plaintiff points to no evidence in the record that he was ever actually diagnosed with

it. Dr. Hampton's report indicates "*possible* obstructive sleep apnea" for which he suggested a sleep study following Plaintiff's maintenance of a sleep log for two weeks. [Tr. 413] (emphasis added). More importantly, Plaintiff points to no evidence that his alleged sleep apnea adversely impacted his functioning. Because sleep apnea was not a condition with which Plaintiff had been diagnosed–or a condition that was demonstrably limiting his functioning–the Court finds that the ALJ had no obligation to address it in his narrative decision.

The Court concludes that the ALJ properly determined Plaintiff's physical RFC.

## C.    Plaintiff's past relevant work

Plaintiff contends that "[t]he ALJ's determination that [he] can perform his past relevant work is not supported by substantial evidence." [Doc. 10 at 20]. Plaintiff argues that he in fact has not performed any "past relevant work" because his disc jockeying was never substantial gainful activity. [Doc. 10 at 21] ("The evidence of record indicates Plaintiff's past work as a disc jockey was sporadic, was part-time, and never constituted substantial gainful activity.").

In response, the Commissioner argues that "it was not unreasonable for the ALJ to conclude that in 1997, Plaintiff worked as a disc jockey." [Doc. 17 at 21]. The Commissioner concludes that there was substantial evidence in the record to support the ALJ's finding that Plaintiff's work as a disc jockey was past relevant work because it "was performed at the sedentary level, and it did not require mental activities greater than those indicated in the RFC finding." [Doc. 17 at 22].

The Court agrees with the Commissioner and finds that there is substantial evidence in the record to support the ALJ's decision that Plaintiff performed past relevant work as a disc jockey. Past relevant work is defined as "work that [a claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20

C.F.R. § 416.960(b)(1); see 20 C.F.R. § 416.965(a). "Substantial gainful activity means work that (a) [i]nvolves doing significant and productive physical or mental duties; and (b) [i]s done (or intended) for pay or profit." 20 C.F.R. § 416.910. Work may be substantial "even if it is done on a part-time basis." 20 C.F.R. § 416.972(a). Work is considered to be done for pay or profit "if it is the kind of work usually done for profit, whether or not a profit is realized." 20 C.F.R. § 416.972(b).

In this case, the record indicates that Plaintiff worked sporadically as a disc jockey from at least January 1992 through at least September 2001. [Tr. 103, 111]. Plaintiff indicated that in this capacity he was a lead worker, supervised ten people, played music, and "made sure the girls were on stage on time." [Tr. 106-08]. The Court finds these duties "significant and productive." Because part-time work may be substantial, see 20 C.F.R. § 416.972(a), the fact that Plaintiff's work as a disc jockey was "sporadic" and "part-time," [Doc. 10 at 21], is inapposite. The record indicates that Plaintiff earned $5.00 per hour at one job disc jockeying, $6.00 at another, and $50.00 per day at another. See [Tr. 106-08]. Clearly, the job was done for pay. Based on the foregoing, the Court finds that Plaintiff's experience as a disc jockey qualifies as substantial gainful activity and hence as past relevant work.

Plaintiff next contends that the ALJ's analysis of his ability to perform past relevant work was flawed in that it did not adhere to the requirements of SSR 82-62 (08/20/1980). [Doc. 10 at 23-24]. The Court disagrees.

SSR 82-62 provides that a finding that a person can perform a past relevant job requires at least "[a] finding of fact as to the individual's RFC," "[a] finding of fact as to the physical and mental demands of the past job/occupation," and "[a] finding of fact that the individual's RFC would permit a return to his or her past job or occupation." In this case, the ALJ found that Plaintiff was able to "perform light work, including occasional climbing, balancing, stooping, kneeling, crouching,

crawling, and overhead reaching." [Tr. 17].  Additionally, he found that although "[Plaintiff's] mood and personality could limit his persistence, concentration, and social interaction such that he could not perform more complex tasks []or deal with public except in simple situations," he possessed the ability to "understand and carry out simple to low level detailed tasks while getting alon[g] with others and adapting at that level of function."  [Tr. 18].

Plaintiff's self-report indicates that his work as a disc jockey required him to lift nothing heavier than CDs, walk for one hour a day, stand for half an hour a day, sit for six hours a day, reach for six hours a day, and write, type, or handle small objects for six hours a day.  See [Tr. 106].  Some of his jobs as a disc jockey required him to supervise others in a limited way, by "ma[king] sure the girls were on stage on time," [Tr. 108], while others did not, see [Tr. 113, 115].  The ALJ noted that Plaintiff's description of his work as a disc jockey indicated that it was physically a "sedentary level of exertion" and "did not require mental activities greater than those provided by his residual functional capacity." [Tr. 19].

Comparing Plaintiff's RFC with the demands of his past work, the ALJ concluded that Plaintiff "[was] able to perform [his work] as he described it."  [Tr. 19].  The Court finds that the ALJ's conclusion about Plaintiff's ability to perform past relevant work supported by substantial evidence and was reached in conformity with SSR 82-62.

## V.    CONCLUSION

For the foregoing reasons, it is hereby **RECOMMENDED**[5] that Plaintiff's Motion for Summary Judgment **[Doc. 9]** be **DENIED**, and that Commissioner's Motion for Summary Judgment **[Doc. 16]** be **GRANTED**.

Respectfully submitted,

s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[5] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 155 (1985) (affirming the Court of Appeals for the Sixth Circuit rule "conditioning appeal, when taken from a district court judgment that adopts a magistrate's recommendation, upon the filing of objections"). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are preserved for appellate review. Smith v. Detroit Fed'n of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).